24 Civ. 4918 (JLR) (OTW)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT MURRAY,

                                                   Plaintiff,

                  -against-

CITY OF NEW YORK, et al.,

                                              Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

*MURIEL GOODE-TRUFANT*
*Corporation Counsel of the City of New York*
*Attorney for Defendant City*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Joseph Zangrilli*
*Tel: (212) 356-2657*
*Of Counsel: John McLaughlin*
*Tel: (212) 356-2670*
*Matter No.: 2024-064071*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................II

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 1

LEGAL STANDARD ....................................................................................................... 3

ARGUMENT .................................................................................................................... 4

    POINT I

        THE COMPLAINT FAILS TO ALLEGE ANY
        BASIS FOR MUNICIPAL LIABILITY ....................................................... 4

        A. Plaintiff Fails to Identify Any Municipal Policy
           or Custom That Caused the Alleged
           Constitutional Violations ....................................................................... 5

        B. Plaintiff's Conclusory Allegation of a DOC
           "Cover-Up" Fails to Establish Municipal
           Liability ................................................................................................. 7

        C. Plaintiff's "Box Status" Allegation Describes
           Medical Isolation, Not a Constitutionally
           Infirm Policy ......................................................................................... 7

        D. Plaintiff Has Failed to Comply with Notice-of-
           Claim Requirements for Any Potential State-
           Law Claims ........................................................................................... 8

CONCLUSION ............................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                                                            **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................................3

*Bell v. Wolfish*,
    441 U.S. 520 (1979)...............................................................................................................8

*City of Oklahoma City v. Tuttle*,
    471 U.S. 808 (1985)...............................................................................................................6

*Connick v. Thompson*,
    563 U.S. 51 (2011).................................................................................................................6

*Handy v. City of New York*,
    19 Civ. 3885 (MKV) (OTW), 2021 U.S. Dist. LEXIS 189124
    (S.D.N.Y. Aug. 27, 2021),
    *adopted*, 2021 U.S. Dist. LEXIS 187668
    (S.D.N.Y. Sept. 29, 2021)......................................................................................................5

*Hardy v. New York City Health & Hosps. Corp.*,
    164 F.3d 789 (2d Cir. 1999)...................................................................................................9

*Kassner v. 2nd Ave. Delicatessen Inc.*,
    496 F.3d 229 (2d Cir. 2007)...................................................................................................3

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011)...................................................................................................3

*McLennon v. City of New York*,
    171 F. Supp. 3d 69 (E.D.N.Y. 2016) .....................................................................................4

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978)............................................................................................................4, 6

*Murray v. City of New York*,
    21 Civ. 6718 (LJL)..................................................................................................................7

*Pettiford v. City of Yonkers*,
    2021 U.S. Dist. LEXIS 116618
    (S.D.N.Y. June 21, 2021).......................................................................................................6

**Cases**                                                                                                                    **Pages**

*Rolon v. Henneman*,
   517 F.3d 140 (2d Cir. 2008)..................................................................................................3

*Roundtree v. City of New York*,
   15 Civ. 8198 (WHP), 2018 U.S. Dist. LEXIS 51919
   (S.D.N.Y. Mar. 28, 2018) ...............................................................................................4, 6

*Saleh v. City of New York*,
   No. 06 Civ. 1007 (SHS), 2007 U.S. Dist. LEXIS 92193
   (S.D.N.Y. Dec. 17, 2007)..................................................................................................7

*Torraco v. Port Auth. of N.Y. & N.J.*,
   615 F.3d 129 (2d Cir. 2010)..............................................................................................4

*Walker v. City of New York*,
   974 F.2d 293 (2d Cir. 1992)..............................................................................................7

*Zahra v. Town of Southold*,
   48 F.3d 674 (2d Cir. 1995)................................................................................................5

**Statutes**

42 U.S.C. § 1983................................................................................................................2, 4

Fed. R. Civ. P. 12(b)(6)......................................................................................................1, 3

N.Y. Gen. Mun. Law § 50-i ............................................................................................. 1, 8-9

N.Y. Gen. Mun. Law § 50-e ............................................................................................. 1, 8-9

**PRELIMINARY STATEMENT**

*Pro se* Plaintiff Robert Lee Murray brings this lawsuit in which he alleges that, over an eleven-day span in April–May 2023, unnamed correction officers at three different Department of Correction ("DOC") facilities threatened, assaulted, and deprived him of food, water, and medical care, while briefly holding him in 23-hour lockdown at West Facility. None of those allegations ties his injuries to a City policy, custom, or act of a final policymaker, as required to establish municipal liability. At most, Plaintiff describes discrete misconduct by individual officers that cannot support municipal liability.

The Complaint never identifies (i) a formal DOC directive authorizing the alleged abuses, (ii) a pattern of similar incidents affecting other detainees, (iii) a policymaker's involvement, or (iv) a failure-to-train so obvious that deliberate indifference can be inferred. His solitary-confinement allegation fares no better: Plaintiff concedes he was housed in West Facility, DOC's communicable-disease unit. He pleads no facts suggesting his brief isolation there was imposed contrary to DOC's quarantine policy or that the policy itself is unconstitutional. Even accepting the allegations as true, such a purported departure from policy cannot establish liability against the City.

Because the Complaint offers only legal conclusions and isolated events, it fails the plausibility standard, as is required for pleadings. Moreover, to the extent Plaintiff intends state-law tort claims, he omits the mandatory notice-of-claim allegations required by N.Y. Gen. Mun. Law §§ 50-e, 50-i. The City therefore respectfully moves under Rule 12(b)(6) to dismiss all claims against it, with prejudice.

**STATEMENT OF FACTS**

Plaintiff's claims arise from a series of discrete incidents allegedly occurring while he was in DOC custody between April 26, 2023, and May 6, 2023. (Compl. at 4-7, ECF

No. 1). Plaintiff filed this *pro se* action in March 2024, purportedly asserting claims under 42 U.S.C. § 1983.

According to the Complaint, on April 26, 2023, at Anna M. Kross Center ("AMKC") on Rikers Island, an unidentified correction officer allegedly threatened plaintiff. (*Id*. at 4). When a supervisor arrived, Plaintiff was seated on the floor to "show [he] was no threat," yet alleges he was pepper-sprayed twice by a captain. (*Id*.) Plaintiff attributes his inability to stand to "a chronic case of neuropathy." (*Id*.).

Plaintiff alleges that on April 27, 2023, "5-6 masked COs with shields" entered his cell, assaulted him, and pepper-sprayed him while he was "[l]ying on the floor." (*Id.* at 5). The officers transported him by wheelchair to see a psychiatrist who declined to transfer him to a mental observation unit. (*Id*.). Thereafter, Plaintiff was left on the floor in a "receiving room area" for "6-8 hours" before being transported to Vernon C. Bain Correctional Center ("VCBC") and then to Lincoln Hospital. (*Id*.).

On April 28, 2023, Plaintiff was transported to the West Facility instead of the North Infirmarny Command ("NIC") medical unit, where officers "dragged [him] off with shields," "assault[ed] [him]," and placed him in a cell without running water. (*Id*. at 6). For two days, food was placed "on the counter" but officers would not open his door, leaving him "without food or water." (*Id*.). Plaintiff states that on May 6, 2023, he was "found unresponsive" and transported to hospitals for treatment. (*Id*.). The Complaint further states that "DOC Staff tried to make it look like an [overdose] su[ic]ide . . .to avoid liability and to stop [him] from iden[t]ifying the COs that rape[d] [him] in 2020[.]" (*Id*. at 7). Plaintiff states that he has been "held against [his] will in a cell 23 hours a day in retaliation for filing lawsuits under box status" (*Id*.).

2

**LEGAL STANDARD**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While at the motion to dismiss stage the Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor, *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007), this "tenet is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," and must tender more than mere "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557. "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

While courts must construe *pro se* pleadings liberally and interpret them as raising the strongest arguments they suggest, even *pro se* plaintiffs must establish that the complaint states a plausible claim for relief. *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (courts are "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions[.]") (internal quotation marks omitted).

## ARGUMENT

### POINT I

### THE COMPLAINT FAILS TO ALLEGE ANY BASIS FOR MUNICIPAL LIABILITY

Plaintiff's claims against the City of New York fail as a matter of law because the Complaint is devoid of any allegations that would support municipal liability under 42 U.S.C. § 1983. It is axiomatic that "a municipality may not be held liable under § 1983 for an employee's misconduct under a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Rather, municipal liability attaches only where a plaintiff establishes "(1) an official policy or custom that (2) cause[d] the plaintiff to be subjected to (3) denial of a constitutional right." *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010) (internal citations omitted).

The Supreme Court has made clear that such liability must arise from "the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694. Courts in this Circuit have recognized four avenues through which a plaintiff may establish such a policy or custom:

> (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised deliberate indifference to the rights of the plaintiff and others encountering those subordinates.

*Roundtree v. City of New York*, 15 Civ. 8198 (WHP), 2018 U.S. Dist. LEXIS 51919, at *13 (S.D.N.Y. Mar. 28, 2018) (quoting *McLennon v. City of New York*, 171 F. Supp. 3d 69, 94 (E.D.N.Y. 2016)).

The Second Circuit has repeatedly emphasized that a plaintiff seeking to hold a municipality liable must do more than merely recite the elements of a *Monell* claim—he must plead factual content that allows the court to draw the reasonable inference that the municipality maintained a policy, custom, or practice that caused the alleged constitutional injury. *See Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) ("[T]he mere assertion . . . that a municipality has . . . a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.") (internal quotation marks omitted).

A.  **Plaintiff Fails to Identify Any Municipal Policy or Custom That Caused the Alleged Constitutional Violations.**

Plaintiff's Complaint is entirely bereft of allegations that would satisfy any of the established criteria for municipal liability. He identifies no formal DOC policy authorizing the improper use of OC spray or the denial of medical care. He points to no decisions by municipal officials with policymaking authority that caused his alleged injuries. He fails to allege any pattern of similar incidents involving other inmates that might suggest a persistent and widespread practice. And he articulates no failure-to-train nor failure-to-supervise theory that might implicate deliberate indifference by City policymakers.

Where, as here, a plaintiff "makes no allegations whatsoever regarding the City and does not allege any institutional policy or practice to bolster his claims," courts routinely dismiss the municipal defendant. Report & Recommendation, *Handy v. City of New York*, 19 Civ. 3885 (MKV) (OTW), 2021 U.S. Dist. LEXIS 189124, at *18 (S.D.N.Y. Aug. 27, 2021), adopted by *Handy v. City of New York*, 2021 U.S. Dist. LEXIS 187668 (S.D.N.Y. Sept. 29, 2021). Plaintiff's allegations, if accepted as true, describe a series of troubling incidents that occurred from April 26 to May 6, 2023, at various DOC facilities. These incidents include

alleged excessive force through the use of pepper spray, physical assaults, denial of medical care, and deprivation of food and water. However, these allegations concern discrete incidents involving different correction officers at different DOC facilities over an 11-day period, all affecting only Plaintiff himself. Courts have consistently held that "wholly conclusory" accusations originating from "isolated incidents that affected [the plaintiff]" are insufficient to support a Monell claim. *Roundtree*, 2018 U.S. Dist. LEXIS 51919, at *13. As the Supreme Court has emphasized, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

In *Pettiford v. City of Yonkers*, the court noted that municipal liability based on inaction, such as failure to train, supervise, or discipline, requires showing that "the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality . . . can be found deliberately indifferent to the need." 2021 U.S. Dist. LEXIS 116618, at *17-18 (S.D.N.Y. June 21, 2021) (internal quotation marks and citations omitted). Municipal liability "is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Plaintiff here has alleged no facts that would establish such deliberate indifference.

The Second Circuit has established that to demonstrate deliberate indifference in the failure to train context, a plaintiff must show: (1) "a policymaker knows to a moral certainty that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training . . . will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the city

6

employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992). Plaintiff's Complaint contains no allegations that would satisfy any of these elements.

**B.      Plaintiff's Conclusory Allegation of a DOC "Cover-Up" Fails to Establish Municipal Liability.**

Plaintiff's allegation that "DOC Staff tried to make it look like an overdose suicide… to avoid liability and to stop [him] from identifying the COs that raped [him] in 2020" (Compl. at 7) is entirely conclusory and unsupported by any factual allegations that would suggest a department-wide conspiracy or cover-up policy. Such speculative allegations cannot form the basis of municipal liability. *See Saleh v. City of New York*, No. 06 Civ. 1007 (SHS), 2007 U.S. Dist. LEXIS 92193, at *28-30 (S.D.N.Y. Dec. 17, 2007).

Further undermining Plaintiff's conclusory "cover-up" allegation is the fact that Plaintiff himself filed a separate federal action in 2021 concerning his alleged 2020 rape (*Murray v. City of New York*, 21 Civ. 6718 (LJL)). Notably, in that litigation, Plaintiff did not independently attempt to identify the officers allegedly involved in the 2020 incident, but rather relied upon the City's compliance with the Court's *Valentin* order to identify potential defendants. (*See* 21 Civ. 6718, ECF Nos. 108, 122, 125). This litigation history directly contradicts Plaintiff's current assertion that the City engaged in a coordinated effort to prevent him from "identifying the COs that raped [him] in 2020." (Compl. at 7). Plaintiff's demonstrated ability to pursue claims related to the alleged 2020 incident through proper judicial channels renders his conspiracy allegations in this action implausible as a matter of law.

**C.      Plaintiff's "Box Status" Allegation Describes Medical Isolation, Not a Constitutionally Infirm Policy.**

Plaintiff's allegation that he has been "held against [his] will in a cell 23 hours a day in retaliation for filing lawsuits under box status" (Compl. at 7) requires particular scrutiny,

7

as it is the only claim potentially implicating a formal DOC policy. However, this conclusory allegation fails to state a plausible *Monell* claim for several reasons.

First, Plaintiff's reference to West Facility is significant. (*See id*. at 6). West Facility is the Department's Communicable-Disease Unit, used for short-term medical isolation upon the written referral of Correctional Health Services ("CHS"). The restrictive conditions in West Facility—including the 23-hour confinement Plaintiff describes—stem from a facially legitimate medical-quarantine policy, not from a punitive or retaliatory practice. Such medically-justified isolation is presumptively constitutional, as it bears a reasonable relation to the legitimate governmental objective of preventing the spread of communicable disease. *See Bell v. Wolfish*, 441 U.S. 520, 539 (1979).

Second, Plaintiff fails to allege any facts suggesting that his placement in West Facility was not medically justified or that he was placed there for retaliatory purposes. He does not allege that he was not contagious or otherwise medically ineligible for isolation, that CHS lacked a medical basis for his placement, or that DOC officials overrode medical judgment to place him in isolation. Critically, Plaintiff fails to allege that a DOC policymaker, rather than medical personnel, made the determination to place him in West Facility.

Third, Plaintiff does not allege that similar misplacements occurred to other inmates or that the City has a policy or practice of misusing medical isolation for non-medical, retaliatory purposes. Plaintiff has failed to allege any facts removing his case from what appears to be a routine, medically-justified isolation under the City's facially valid quarantine policy.

**D.     Plaintiff Has Failed to Comply with Notice-of-Claim Requirements for Any Potential State-Law Claims.**

To the extent Plaintiff intended to assert state-law tort claims against the City, he has failed to plead compliance with the notice-of-claim requirements set forth in General

Municipal Law §§ 50-e and 50-i. Compliance with these provisions is a condition precedent to bringing tort claims against a municipality in New York. *See Hardy v. New York City Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999). Plaintiff's failure to allege compliance with the notice-of-claim requirements provides an independent basis for dismissal of any state-law claims that might be inferred from the Complaint.

**CONCLUSION**

For the reasons set forth herein, defendant City of New York respectfully requests that the Court grant its motion to dismiss all claims against the City with prejudice, together with such other and further relief as the Court deems just and proper.

Dated:    New York, NY
          May 23, 2025

                                                MURIEL GOODE-TRUFANT
                                                Corporation Counsel of the City of New York
                                                *Attorney for Defendant City of New York*
                                                100 Church Street
                                                New York, New York 10007
                                                (212) 356-2670

                                                By: */s/ Joseph Zangrilli*
                                                      Joseph Zangrilli & John McLaughlin
                                                      *Senior Counsel*
                                                      Special Federal Litigation

Cc:    **VIA CERTIFIED MAIL**
       Robert Lee Murray
       B&C: 9902300038
       George R. Vierno Center
       09-09 Hazen St.
       East Elmhurst, NY 11370

10