UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT LEE MURRAY,

                  Plaintiff,

-against-

CITY OF NEW YORK, et al.,

                  Defendants.

Case No. 1:24-cv-04918 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

On June 20, 2024, Plaintiff Robert Murray, proceeding *pro se*, commenced this action against the City of New York (the "City") and certain Department of Correction ("DOC") officers, alleging legal violations arising from his detention in DOC custody between April 26 and May 6, 2023. *See* Dkt. 1 ("Complaint" or "Compl.") at 1, 4-8. Specifically, Plaintiff seeks relief for alleged assaults, threats, denial of medical care, deprivation of food and water, and retaliatory confinement. *Id.* at 4-12.

On May 23, 2025, the City moved to dismiss the Complaint. Dkt. 51 ("Motion"); Dkt. 52 ("Br."). In recognition of his *pro se* and incarcerated status, Plaintiff's deadline to oppose the Motion was repeatedly extended. *See, e.g.*, Dkt. 66 (extending opposition deadline to November 26, 2025); Dkt. 69 (extending deadline to December 5, 2025). On December 9, 2025, Plaintiff filed a belated opposition. *See* Dkt. 71 ("Opp."). On December 15, 2025, the City submitted a reply. Dkt. 72 ("Reply"). For the reasons below, the City's Motion is GRANTED.

## BACKGROUND

The following facts are drawn from the Complaint and taken as true for purposes of resolving the Motion.

1

The Complaint alleges a series of discrete incidents involving multiple correction officers ("COs") at three DOC facilities over an approximately eleven-day period. On April 26, 2023, while at the Anna M. Kross Center ("AMKC") on Rikers Island, an unidentified CO threatened Plaintiff, and a captain later pepper-sprayed Plaintiff twice while Plaintiff was seated on the floor. Compl. at 4. Later, on April 27, 2023, Plaintiff alleges "5-6 masked COs with shields" again used force and pepper sprayed him. *Id.* at 5.

That same day, Plaintiff, who suffers from neuropathy and has trouble walking, was allegedly left on the floor for "6-8 hours" while awaiting transport to Vernon C. Bain Correctional Center ("VCBC") and, thereafter, the hospital. *Id.* Following his return to AMKC on April 28, 2023, Plaintiff says that he was denied timely medical care, physically assaulted, and deprived of food and water through April 30, 2023. *Id.* at 6. On May 6, 2023, Plaintiff was "found unresponsive" in his cell, at which point officers transferred him to Bellevue Hospital for treatment. *Id.* Plaintiff alleges that DOC staff then attempted to conceal their misconduct by making the incident "look like an overdose suicide." *Id.* at 8. "[I]n retaliation for [him] filing lawsuits" regarding similar incidents in the past, Plaintiff was "held against [his] will in a cell 23 hours a day" under "box status" at the West Facility on Rikers Island. *Id.* at 7. This retaliatory detention allegedly began in March 2023 or 2024, but Plaintiff does not specify if or when it ended. *Id.*

## LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court draws all reasonable inferences in the plaintiff's favor and accepts as true all nonconclusory allegations of fact. *Id.* However, a complaint must

2

allege "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "Determining whether a complaint states a plausible claim" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A *pro se* complaint is construed "liberally" and "interpreted to raise the strongest claims that it suggests," but even "a *pro se* complaint must state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

**DISCUSSION**

The Court construes Plaintiff's allegations as asserting claims under 42 U.S.C. § 1983. To state a section 1983 claim against the City, Plaintiff must allege that the violation of his rights resulted from a municipal policy or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Lore v. City of Syracuse*, 670 F.3d 127, 168 (2d Cir. 2012). "[A] municipality cannot be held liable under § 1983 for an employee's misconduct under a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Rather, a municipality may be liable only where a plaintiff establishes "(1) an official policy or custom that (2) cause[d] the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 140 (2d Cir. 2010) (internal citations omitted); *see also Greene v. City of New York*, 725 F. Supp. 3d 400, 428 (S.D.N.Y. 2024). A plaintiff may establish the existence of "an official policy or custom" by alleging one of the following:

> (1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees.

*Cotto v. Dee 1-5*, No. 18-cv-02130 (CM), 2018 WL 10140180, at *2 (S.D.N.Y. Apr. 17, 2018) (quoting *Prowisor v. Bon-Ton, Inc.*, 426 F. Supp. 2d 165, 174 (S.D.N.Y. 2006)).  However, "the mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (alterations adopted) (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)).  And "[a] single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Dwares*, 985 F.2d at 100.

Here, Plaintiff fails to allege any facts that suggest his injuries are traceable to a municipal policy or practice.[1]

### A. Plaintiff Does Not Plead a Plausible *Monell* Claim Against the City

Plaintiff does not identify any formal DOC policy authorizing the alleged use of force, denial of medical care, or deprivation of necessities that he allegedly experienced.  *See generally* Compl. at 4-8.  Nor does he allege that any of the conduct at issue was ordered, ratified, or approved by a municipal policymaker.  As the City correctly observes, "[t]he Complaint never identifies (i) a formal DOC directive authorizing the alleged abuses, (ii) a pattern of similar incidents affecting other detainees, [or] (iii) a policymaker's involvement." Br. at 1.  Instead, Plaintiff alleges a series of isolated incidents involving different officers at different facilities over a period of time.  Such allegations, even if true, are insufficient to state a claim against the City.  The Supreme Court has made clear that "[p]roof of a single incident of unconstitutional

---

[1] Plaintiff also fails to identify the specific constitutional rights that the COs' actions violated. The Court need not determine which rights are at issue because, independent of any constitutional analysis, Plaintiff's claims fail for their lack of connection to a municipal policy or practice, as set forth below.

4

activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).  Plaintiff's allegations therefore fail to establish the requisite "affirmative link between the [City's] policy and the particular constitutional violation alleged."  *Id.* at 823.

### B. Plaintiff Does Not Plead Failure-to-Train or Failure-to-Supervise Liability

Plaintiff also fails to state a claim under a failure-to-train or failure-to-supervise theory.  As the Supreme Court has cautioned, municipal liability "is at its most tenuous where a claim turns on a failure to train."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  Such claims require allegations showing that municipal policymakers acted with "deliberate indifference" to constitutional rights.  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Plaintiff's Complaint contains no allegations concerning DOC training or supervision practices.  *See* Compl. at 4-8.  He does not identify any deficiency in training, any pattern of similar misconduct, or any facts suggesting that policymakers knew "to a moral certainty" that officers would confront Plaintiff's particular situation and mishandle it.  *See Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992) (quoting *Harris*, 489 U.S. at 390 n.10).  The Complaint is "devoid of any detailed factual allegations" showing the absence of "a relevant training or supervisory program."  *Quick v. Westchester County*, No. 18-cv-00243 (KMK), 2019 WL 1083784, at *5 (S.D.N.Y. Mar. 7, 2019).  Absent such factual allegations, Plaintiff's Complaint cannot sustain a failure-to-train or failure-to-supervise claim.

### C. Plaintiff's Allegations of a DOC "Cover-Up" and Retaliation Are Conclusory

Plaintiff alleges that DOC staff attempted to conceal misconduct by making his medical episode "look like an overdose suicide," Compl. at 8, and held Plaintiff "in a cell 23 hours a day

in retaliation for [Plaintiff] filing lawsuits," *id.* at 7.  These claims fail because they are entirely conclusory.  As to his first claim, Plaintiff does not allege who participated in the cover-up, what actions were taken pursuant to any City policy, or how such actions caused his injuries.  Such speculation is insufficient to establish municipal liability.  *See River v. City of New York*, No. 07-cv-05999 (DAB), 2010 WL 1253983, at *5 (S.D.N.Y. Mar. 17, 2010) ("Because Plaintiffs' . . . allegations are speculative and conclusory, they do not state a plausible claim for municipal liability under Section 1983.").

Plaintiff's retaliatory confinement claim fares no better.  Plaintiff alleges that he was confined "23 hours a day" under "box status" while housed at West Facility in retaliation for filing lawsuits against the DOC.  Compl. at 7.  To hold the City liable for the alleged retaliation, however, Plaintiff must assert that he was retaliated against pursuant to an identified municipal policy or custom.  *Monell*, 436 U.S. at 694-95; *see also, e.g.*, *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 383 (S.D.N.Y. 2015) (dismissing *Monell* claim against City for failure to allege a municipal policy, even though First Amendment retaliation claim against individual defendants survived).  Plaintiff does not do so.  Recall that the four ways to show a municipal policy or custom are: (1) a formal policy; (2) actions or decisions by officials with final authority; (3) a widespread, persistent practice; or (4) failure to train or supervise amounting to deliberate indifference.  *Cotto*, 2018 WL 10140180, at *2.  Here, Plaintiff does not identify any formal City policy of detaining prisoners in retaliation for filing lawsuits.  Nor does Plaintiff identify the Defendants who allegedly placed him under "box status," making it impossible to infer that those individuals had policymaking authority.  Plaintiff also points to no other instance of such retaliatory detention against him or other inmates.  Lastly, Plaintiff does not allege that

the retaliation was due to any training deficiency. Thus, Plaintiff cannot establish municipal liability under *Monell*.[2]

Accordingly, the City's Motion must be granted as to Plaintiff's municipal liability claims. *See, e.g.*, *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 302 (S.D.N.Y. 2015) (dismissing municipal liability claim because plaintiffs' allegations were "boilerplate" and plaintiffs "d[id] not identify any specific provision"); *White v. City of New York*, 206 F. Supp. 3d 920, 938 (S.D.N.Y. 2016) (dismissing municipal liability claim because plaintiff's allegations were "conclusory" and "generalized" and failed to identify a specific policy or custom).

---

[2] The City notes that this claim could implicate a formal DOC policy given Plaintiff's reference to West Facility, as West Facility is the DOC's communicable-disease unit wherein medical isolation policies and procedures are effectuated. Br. at 8. However, Plaintiff has not plausibly pleaded the existence of a causal connection between the protected activity (here, Plaintiff filing lawsuits against the DOC) and an adverse action. *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (observing that to assert a retaliation claim, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action" (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004))). Courts "may infer [a] . . . retaliatory motive in the adverse action from: (1) the temporal proximity of the filing to the grievance and the disciplinary action; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining the plaintiff." *Thomas v. DeCastro*, No. 14-cv-06409 (KMK), 2019 WL 1428365, at *9 (S.D.N.Y. Mar. 29, 2019) (quoting *Barnes v. Harling*, 368 F. Supp. 3d 573, 600 (W.D.N.Y. 2019)). Plaintiff's Complaint does not specify which Defendants retaliated against him or provide any facts to suggest a causal or temporal link between Plaintiff's lawsuits and his placement in "box status" at West Facility. Further, restrictive conditions at West Facility that stem from a facially legitimate medical-quarantine policy are reasonably related to legitimate governmental objectives, like disease prevention, and are therefore constitutional. *Bell v. Wolfish*, 441 U.S. 520, 539 (1979). Plaintiff does not allege that his placement was medically unjustified or imposed contrary to DOC medical-quarantine policy; nor does he allege that the City had a policy of misusing medical isolation for retaliatory purposes. In short, "the claim, as pled, is too vague to give rise to a plausible inference o[f] retaliation." *Milhouse v. City of New York*, No. 24-cv-00611 (LAK) (KHP), 2024 WL 5716620, at *12 (S.D.N.Y. Dec. 6, 2024); *see also, e.g.*, *Soto v. Iacavino*, No. 01-cv-05850 (JSM), 2003 WL 21281762, at *1 (S.D.N.Y. June 4, 2003) (dismissing First Amendment retaliation claim based on vague and conclusory allegations that defendants denied medical treatment in retaliation for plaintiff filing grievances); *Rivera v. Goord*, 119 F. Supp. 2d 327, 341 (S.D.N.Y. 2000) (dismissing First Amendment retaliation claim for lack of detail and causal connection).

### D. Any State-Law Claims Are Barred by Failure to Plead Notice of Claim

Finally, to the extent the Complaint may be construed to assert state-law tort claims, those claims must also be dismissed. New York General Municipal Law §§ 50-e and 50-i require a plaintiff to serve a notice of claim within ninety days of the claim's accrual and to plead compliance with the notice requirement in the complaint. *See* N.Y. Gen. Mun. Law §§ 50-e, 50-i.

The Complaint contains no allegation that Plaintiff filed a notice of claim or sought leave to file a late notice. *See generally* Compl. As the Second Circuit has held, failure to plead compliance with these provisions requires dismissal. *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1999) (affirming dismissal of claim for failure to meet New York's notice-of-claim requirement).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED, and the Complaint is dismissed as to the City.

The Clerk of Court is respectfully directed to close the motion at Dkt. 52 and terminate the City as a party.

Dated: December 23, 2025
       New York, New York

SO ORDERED.

_____
JENNIFER L. ROCHON
United States District Judge

8